and you will be heard. God save these United States and this honorable court. Good morning. Please be seated. I'll just take a minute here to get our papers set up. Okay. Sorry for all the rustling. Good morning. My name is Morgan Christen. I'm one of the judges on the circuit court. I'm delighted to be in San Francisco today, although I was just telling Judge Bress we have nicer weather in Alaska today than we do in San Francisco, but I'm happy to be here. I'm very happy to be sitting with Judge Bress all week and we're both delighted to welcome and thank Judge Antone, who's here sitting pro tem, helping us out on our calendar all the way from Florida. Just a little bit of housekeeping, please. There's a couple cases submitted on the briefs. Case number 22-478, Garung v. Garland will be submitted. We will not hear argument in that case today. Cases 22-981 and 22-1850, Singh v. Garland is also submitted. And we had a late case vacated from the calendar, so for clarity I'll mention Buggs v. Matteson, 21-16488 has been vacated. Or I should say argument has been vacated. We'll go to the first case on the calendar, please. Contreras Portillo v. Garland, 22-326. And counsel, when you are ready, we are ready for your argument. Good morning. Good morning. May it please the Court, I'm Sylvia Roxanne Rodesno on behalf of Mr. Juan Carlos Portillo Contreras. I would like to reserve three minutes for Mr. Portillo appeals the Board's decision regarding his designation as an arriving alien. Your Honors, the main issue before us is whether or not Mr. Portillo is an arriving alien. He is not an arriving alien. Based on the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, hereinafter MTINA, where the Congress specifically has the intent and states clearly that a TPS beneficiary who returns from temporary authorized travel abroad shall, barring crimes, be inspected and admitted in the same immigration status the alien had at the time of departure. What status did he have at the time of departure? He had received a I-512L authorization for parole of an alien into the United States and he had entered the United States without inspection on June 18, 2000. So when he entered the United States, that was his status. He received an advance parole document specifically for TPS based on his Salvadorian TPS, so it's very specific. So forgive me for interrupting, I'm sorry. So my understanding is he entered unlawfully? Yes. He was granted TPS at some point, his country was granted TPS and he was at some point, and then he received advance parole. And then we have this, you know, this is the general way that works for advance parole, but the statute you just referred to is a much more specific statute governing TPS. Yes, Your Honor. So this is a specific provision part of MTINA that specifically governs foreign travel of a TPS beneficiary who obtains permission to travel temporarily. And the MTINA specifically says this, this is, as I'm saying, it's very clear that you shall be inspected and admitted in the same immigration status the alien had at the time of departure. I think that's right, it is unambiguous. I am interrupting. No, no, you please. I would just say, I think your point is well taken, but there's a couple procedural hoops, I think, that we need to discuss, please, and you don't have a lot of time, so I want to make sure you have a chance to respond. So he raised this for the first time. I think the BIA may be generously construed that he raised it for the first time and the motion to reconsider by attaching the unprecedented decision. We know that has now been withdrawn. But the BIA then, I think they said both things, right? They said you're too late raising this argument, and then I think they decided that on the merits, that the IJ did not have jurisdiction. Is that your read? No, Your Honor. So initially we're Well, forgive me, did have jurisdiction, I misspoke. So they affirmed, they went forward and said that he did have jurisdiction, that the argument was not well taken. But, so in other words, if we grant everything you're telling us about this argument about the TPS regulation and statute, the BIA at the end of the decision tree rules in the alternative. Yes, Your Honor. So just going back. Initially we had on the appeal stated that one of the reasons, one of the forms of relief that was denied was voluntary departure. And it was denied because at the immigration court level, because the immigration judge found that Mr. Portillo was an arriving alien. So they could not go into any of the statutory eligibility requirements to see if he had $500 bond, whether he had an order, whether he would comply with the orders. Any of the other statutory requirements, those were not looked at at the immigration court level. So when we appealed, we appealed on saying that voluntary, that it was based on voluntary departure of an arriving alien. That was the error. So we did say that Mr. Portillo is not an arriving alien on our first appeal. But how about the challenge to the adjustment of status to the, effectively the denial of adjustment of status because the IJ lacked jurisdiction? Yes. The denial of the adjustment of status was denied at the United States Citizenship and Immigration Services because it was denied there. However, the immigration judge at that point, we had argued before it went to the USCIS that the immigration judge had jurisdiction. We had been arguing this since the moment that the Assistant Chief Counsel amended his notice to appear. So from the very moment that we found that he was going to be, his NTA was going to be amended. Initially his NTA was entered without inspection. It was amended to classify him as an arriving alien because the Assistant Chief Counsel stated that he had been paroled in the United States. Right, but then the BIA, I mean, this wasn't raised in the BIA brief initially, and then it was raised in the motion to reconsider. And one of the things the BIA said is that the argument, I'm looking at it here on AR4, the argument that the immigration judge has jurisdiction to adjudicate his Form I-485 is not properly raised for the first time in a motion to reconsider. So doesn't that seem like a procedural issue for you here? Your Honor, it may be a procedural issue for adjustment of status. However, the underlying deep issue here is that the arriving alien status, that was briefed, I said voluntary departure. He is not an arriving alien. Therefore, his voluntary departure. But we're not talking about the merits. We're talking about the procedural hoop. And, right, it wasn't raised in the first challenge, and the Board is very clearly on AR4 calling out that it's raised for the first time, improperly raised in the motion for reconsider. I think that what I indicated earlier is the paragraph by my read goes on to make a merits ruling. And I guess we can discuss whether you read it the same way. I think it goes on to make a merits ruling. That's my read. But even giving you that, at the end of the decision tree, as I, that's my paraphrase, they say they would have denied adjustment of status and an exercise of discretion. So what is your response to that, please? That the immigration court, the immigration judge, had initial jurisdiction. So that decision from the USCIS, it should be rescinded. They had no jurisdiction in the first. Not the USCIS decision. I mean, there's a line in the BIA decision that says, after all of this, it says, regardless, we remain unpersuaded that the respondent merits relief in the exercise of discretion. And, of course, earlier in the decision on the appeal, the BIA had explained why the petitioner here did not merit a favorable exercise of discretion based on his criminal history and other things. And so I think Judge Crist and I have the same point, which is, or question, which is this particular line in the reconsideration opinion, which says that we would not grant him relief in the exercise of our discretion. Why isn't that an alternative basis under which your client can't prevail? That he was granted, it could not be, it was granted on. Yeah, that the BIA would not give him adjustment, even if anybody had jurisdiction here, even if we could get past this arriving alien issue, even if we could get past your client's determination not to raise this in the BIA appeal, there still wasn't going to be a favorable exercise of discretion. Your Honor, the issue here is that, I mean, I just want to continue to say that the arriving alien question here is extremely important. The decision from the BIA, they had entertained the idea. They entertained the idea regarding whether or not my client was an arriving alien. I think that's right. I think he did sufficient. So I'm going to assume he did raise it, and whether he raised it or not, they reached it. That's my hypothetical for you. They reached it and decided that the IJ was right the first time, and my hypothetical assumes that you are right, that the BIA misunderstood and the IJ really did have jurisdiction. I'm granting you all of that, but the bottom of the decision, they say, and regardless of all of that, even if the IJ was wrong and the IJ did have jurisdiction, we would grant adjustment of status on de novo review in the first instance by exercising our discretion. Do you have a response to that? Your Honor, I need to take a moment in order to get the response. I'll respond on my rebuttal. That's fine. That's fine. You can reserve the rest of your time. We'll hear from government counsel. Thank you. Counsel, can you wait just one minute? I don't know if you can see so that you have it. Opposing counsel has a chance to sit and get situated. Yes. Okay, go right ahead. May it please the Court. My name is Jesse Lorenz, and I represent the Attorney General of the United States. This Court should deny this petition for review. Regardless of how the petitioner is classified, be that as an arriving alien or a nonimmigrant who entered without inspection, the Board did not abuse its discretion in denying his motion to reconsider. As an initial matter, the Board did not abuse its broad discretion in concluding that the petitioner had not preserved the issue of whether the immigration judge had jurisdiction to adjudicate adjustment of status by not raising that in his appeal before the Board. Well, what about my question about AR4? That's the operative paragraph. Yes. It says we're not persuaded by the argument. Then it says it's too late to raise it, but it goes on to reach the merits, doesn't it? I think so. I think the Board has indicated that as a matter of discretion, adjustment would be denied. I would also point out that it canceled it. We're not communicating, sorry. I agree with you. They indicated as a matter of discretion they would deny adjustment of status. When I meant on the merits, sir, up at the top of AR4, this is where Judge Bress and I have been trying to prod at this a little bit. Okay. At the top of that page is where the BIA says this new issue about the unprecedented decision is raised for the first time in front of the Board, and they say basically it's too late. And then by my read, as Judge Bress just explained, and by my read they go on to reach the merits. I'm not sure. I'm only one out of three up here. But I'd like your read on this. Do you read this differently, sir? Well, I think the thing is that that is an approach that USCIS eventually came to regarding the issue of whether he would be classified as an arriving alien. I think the law was in flux during the time that Mr. Contreras was going through his proceedings. So, I mean, it was 2019 when USCIS accepted jurisdiction and as a matter of discretion decided against him on adjustment. I don't think this has anything to do with that, though. I mean, the USCIS did get its hands on this. They did issue this ruling. The petitioner is basically saying, yeah, well, they could not do that. It was supposed to go to the IJ. The IJ says it lacks jurisdiction. And now we've got a BIA decision that seems to say three things. It says, one, this arriving alien's argument is wrong. Two, this arriving alien's argument was not even raised initially. Three, we remain unpersuaded that the petitioner merits relief in the exercise of our discretion. Because the regulations say what they say. Well, no, I think the third issue, the discretionary issue, is at the end of the day he has to show he merits a favorable exercise of discretion. They can deny for that reason alone, and that's what they're saying here. Even if the classification is incorrect, they're going to deny adjustment in the exercise of discretion. And we already have a discretionary determination. The cancellation of removal discretionary determination that the immigration judge made considers the exact same factors. What they're saying is at the end of the day, regardless of his classification, we would deny this in the exercise of discretion. Counsel, that's the part we do understand. I'm just going to try one more time. I'm just going to try one more time. Is it your position that he waived this issue by raising it too late before the BIA? That is our position. Why? Well, he didn't raise any challenge to the denial of adjustment of status. In his appeal to the Board, he didn't raise any challenge to the denial of adjustment of status. And his motion to reconsider he did, but a motion to reconsider is not a vehicle to raise an argument that could have earlier been raised. Okay, hold it, hold it. Forgive me for interrupting, but now you're finally at my question. And my question is, I know all that. We know all that. Okay. My question is, that's not true under Ninth Circuit law if the BIA reached the ruling on the merits. Do you read this opinion at AR4, it's the top paragraph, do you read that to be a ruling on the merits? The merits of his adjustment application? Or I guess I'm kind of confused because what they're saying is, even if he satisfies the requirements, and I'm not conceding anything here, even if he satisfies all the requirements for adjustment of status, and even if the immigration judge had jurisdiction, also I'm not conceding that, even if everything is fine, they're going to deny the exercise of discretion. Let me ask you this. You've convinced me to give up. Do you want to try, Judge Breyer? Yeah, I'm not. I never give up. Okay. All right. I think we've discussed the issue of the discretion. I'm satisfied with your answer on that. I guess on the question of the first two points the BIA makes, number one, it says you didn't have to follow this AAO decision. Number two, it says basically, by the way, this wasn't even raised in the initial appeal. I think Judge Kristen is correct that you might think that this issue has now been exhausted in the sense of our jurisdiction because the BIA at least passed on this arriving alien point. I guess the question I have, though, is is the petitioner's failure to raise this in front of the BIA still a ground for the BIA decision in denying reconsideration? I still think so. I mean, they're deciding in the alternative, but I think it's clear from their motion to reconsider precedent, the regulations that he can't raise a new issue in a motion to reconsider, and that's what he did. And, counsel, what about the Ninth Circuit case? I mean, now you've convinced me to get back in the game here. What about the fact that had they stopped and said it's raised too late? I would agree with you. They didn't stop. They went on, right, and they reached the issue by saying, hey, that non-precedential decision doesn't change the fact that the regulations indicated that this person is an arriving alien. And what I'm going to say is even if he is, at the end of the day, it doesn't make any difference in this case. But, like I said, I think that law was kind of in flux at the time. Those AAO decisions, they're for USCIS agents. They're not binding on you or a separate agency. That's not binding on the board. Can I ask you, not to cut you off there, but I believe we issued an order asking the parties to be prepared to talk about the Fifth Circuit case. And I'm just trying to understand if the government's position in this case is consistent with the position that it took in Duarte. Well, again, that's how USCIS is treating people now. I don't know. Like I said, the law was kind of in flux at the time. What's the answer now? Would he be considered an arriving alien by USCIS now? No. Do you, on behalf of the government, argue that he's an arriving alien or do you now maintain that, in fact, no, the IJ had jurisdictions, just that he shouldn't get relief? Well, like I said, I don't think it matters. And I would note, if he reverts back to an alien present without inspection, he's necessarily statutorily ineligible for adjustment of status. Counsel? Counsel? Counsel? Yes, Your Honor. What's your answer to Judge Bress's question? I don't think there's a good answer to that. I mean, certainly USCIS now would treat him as an arriving alien, and they would have said they didn't have jurisdiction, I think. But, you know, that decision is a Fifth Circuit decision. I don't know if I have a firm answer for you other than that, at the end of the day, it doesn't really matter here. And, again, if he's not an arriving alien, he's an alien unlawfully present, and he necessarily isn't eligible for adjustment of status. That's not what the Fifth Circuit majority said. That's what Judge Willett said in his separate writing. The Fifth Circuit majority, I read, to say no. In fact, when he came back, you know, through what we're calling advanced parole, when he came back through San Francisco Airport, he became lawfully admitted for purposes of adjustment of status. I don't see how that's possible. I mean, he has temporary protected status, which it did. He doesn't even have it anymore. But the Supreme Court decision in Sanchez recently said that temporary protected status is not an admission. So I don't see how he would have any lawful status here. Okay, well, so the implication then is that the government is just disagreeing with the Fifth Circuit majority opinion in Duarte. You're entitled to. I'm just trying to understand what your position is. I don't disagree with the Fifth Circuit's decision. The government doesn't disagree with it. What I'm saying is at the end of the day, it doesn't matter what happens, whether he's classified as an arriving alien or as an unlawfully present alien. He's ineligible for adjustment of status. I mean, I don't understand what you just said because I understand the part about it doesn't matter here, but this issue is surely going to arise again. So I'm just trying to understand what the government's position is in light of a fairly changing legal landscape  I thought you just said a second ago that somebody who comes back into the United States on advanced parole shouldn't be regarded as legally admitted. Well, I mean, that's a Supreme Court precedent. Well, it's different. We're talking about temporary protected status. I don't see how he has any status. If he has temporary protected status, that's status, but that's not an admission for the purposes of adjustment of status. He doesn't have temporary protected status anymore. I mean, he's either an arriving alien or an alien present without inspection. There's not really much else there. Excuse me. I want to just make sure that Judge Antoine has a chance to get in a word edgewise if you have any questions. Oh, good. Anything further? I think that's it. You've used up your time. Thank you for your argument, counsel. Okay. Thank you, Your Honors. You bet. We'll hear from opposing counsel, please. Your Honors, to answer your question regarding the discretion and adjustment, it's our position that the BIA did not evaluate all of the factors of adjustment of status. So we don't believe that his adjustment of status was fully evaluated by the board. And in rebuttal to what was just discussed, just to clarify, the Sanchez v. Mayorkas decision that came from the Supreme Court, specifically regarding TPS is an admission, does not bring anything about advanced paroled, MTINA, that is a separate case. So the matter of Duarte v. Mayorkas, that one is specifically on point to our client's case. The two issues that are being discussed there are whether or not someone that entered without inspection receives a travel document, reenters, and whether or not they will be admitted, inspected, and whether or not that will count as an admission. So the Fifth Circuit found that that is an admission when you enter with a travel document and you are questioned, inspected, and admitted based on the admission matter of King-Linton. But why would Congress, if I may, Judge Kristen? Of course. We have Sanchez v. Mayorkas, right, which says that somebody who has TPS status is not lawfully admitted. Why would Congress have set up a system where that person is not lawfully admitted, but if they are allowed to leave the United States for humanitarian reasons and then permitted to come back, that they would then become lawfully admitted? That would seem to create some strange incentives where somebody would actually want to leave here, perhaps to a dangerous country, in order to come back and have their status changed. Well, Your Honor, just as it worked in the case of the Fifth Circuit, it can also have a contrary effect. If a person has a deportation order and they execute the order with the travel document and then they reenter, that could also be an issue. So there's like, according to the MTINA, what they wanted was the person to be inspected and admitted. Just to come back into the United States, it's just an admission, as any other person would be admitted. I mean, it's not going into anything with arriving alien. They're not seeking admission in order to receive, to be paroled. That's not what's happening in Dwarthin. That's not what happened in Mr. Portillo's case. But Judge Brass's point is that some people in the country with TPS entered unlawfully, so they don't have lawful status. That's not true of everybody in TPS status. Some people with TPS status did enter lawfully, but the regulation doesn't break it down that way, so it gets to be pretty problematic. At any rate, we're way over time. Thank you both for your arguments. We'll take that one under advisement. It's accepted for submission, and we'll move on to the next case on the calendar.
judges: CHRISTEN, BRESS, Antoon